IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN ROTH

Plaintiff,

v.

OPINION and ORDER

KILOLO KIJAKAZI,                                      20-cv-1077-jdp
Acting Commissioner of
Social Security,[1]

Defendant.

---

Plaintiff John Roth seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding Roth not disabled within the meaning of the Social Security Act. Roth contends that the administrative law judge (ALJ), Ahavaha Pyrtel, erred by (1) not fully analyzing whether Roth met the criteria for a listed disability; (2) conducting an inadequate assessment of Roth's mental limitations; and (3) failing to explain the basis for the limitations ascribed to Roth's physical impairments in Roth's Residual Functional Capacity (RFC). Roth also contends that the ALJ did not have the authority to hear his claim because the structure for removing the commissioner of Social Security violates the U.S. Constitution.

The ALJ adequately considered whether Roth met the criteria for a listed disability, and any error in the ALJ's assessment of Roth's mental and physical limitations is harmless. Roth is not entitled to remand because of his alleged constitutional injury. Roth has not shown any basis for remanding the case, so the court will affirm the commissioner's decision and cancel the hearing scheduled for December 30, 2021.

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

BACKGROUND

Roth sought benefits based on both physical and mental impairments, alleging disability beginning on January 1, 2017, when he was 49 years old. R. 1, R. 29.[2] In a written decision, the ALJ found that Roth suffered from three severe impairments: a history of prostate cancer resulting in urinary incontinence, chemotherapy-induced peripheral neuropathy, and other unspecified arthropathies. R. 18. The ALJ found that Roth had no severe mental impairments, though he did have some mild mental impairments. R. 20.

The ALJ then determined that Roth did not meet the criteria for any listed disability. R. 21. The ALJ ascribed to Roth the RFC to perform light work with additional physical restrictions. R.22. Based on the testimony of a vocational expert, the ALJ found that Roth was not disabled because he could work full-time as a marker, a routing clerk, and a router. R. 30. The Appeals Council declined review. R. 1.

ANALYSIS

On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. See *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

---

[2] Record cites are to the administrative transcript located at Dkt. 12.

Roth's several substantive complaints can be sorted into three categories. First, he says that the ALJ failed to fully analyze whether he met the criteria of a listed disability. Second, he says the ALJ improperly assessed the extent of Roth's mental limitations. Third, he says the ALJ conducted an inadequate treatment of Roth's physical limitations when determining Roth's RFC.

## A.  Listed disability

Roth says that he meets the criteria for Listing 13.24A, which is met when an individual's prostate cancer is "[p]rogressive or recurrent (not including biochemical recurrence) despite initial hormonal intervention." Roth contends that the ALJ erred when she found that Roth's cancer did not meet the listing because (1) the ALJ improperly discredited the opinion of Dr. Nelson, one of Roth's physicians; and (2) the ALJ merely summarized the medical evidence related to Roth's cancer and did not analyze it.

Roth has the burden to prove he meets the criteria of a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Roth attempted to meet his burden by providing an April 2019 report from his treating physician, Dr. Nelson. Nelson checked "yes" in a box that asked whether Roth met listing 13.24, and circled subpart (A), indicating that Roth's cancer was progressive or recurrent despite initial hormone intervention. R. 407. Nelson wrote that Roth's cancer met the requirements of the listed disability because "extraprostatic extension was seen into the seminal vesicles, spread to lymph nodes." *Id*.

The ALJ acknowledged that Nelson had opined that Roth met listing 13.24. R.21. But she said that Nelson's opinion was inconsistent with the objective evidence. She noted that Roth started hormone intervention in February 2017 and continued to receive injections while he was undergoing chemotherapy and radiation. But the ALJ wrote that after initiating

3

hormone intervention, Roth's cancer did not progress or recur. The ALJ did not at that point cite evidence for that proposition. R. 21.

Later in the opinion, ALJ summarized Roth's treatment history in more detail. She wrote that Roth underwent a robotic prostatectomy in January 2017 before he began hormone therapy in February. R. 23. Roth's prostate-specific antigen (PSA) became undetectable in August 2017. In August 2019, Dr. Nelson indicated that he thought hormone therapy would work for five to eight years, and then unfortunately Roth might see some progression of his cancer. The ALJ concluded that "the current treatment notes do not show any progression" and cited Dr. Nelson's treatment notes.

The ALJ's citations allow the court to trace her chain of reasoning. The contradictions between Nelson's opinion and the evidence the ALJ identified are apparent. Dr. Nelson's 2019 note says that Roth's hormone treatments will likely work for five to eight years, and then Roth will see some progression; from that, it follows that Roth's cancer is not currently progressing. There is no mention of progression in the most recent treatment notes. And Roth's PSA became undetectable in August 2017, which is evidence that his cancer had been successfully treated and was not then progressing. These facts are all inconsistent with Nelson's opinion that Roth's cancer is progressive or recurrent.

Roth says that the ALJ failed to account for other evidence that shows his cancer is progressive or recurrent: (1) Roth received further treatments after beginning hormone injections; (2) Dr. Nelson's observation that Roth had "positive lymph node invasion with 3 lymph nodes positive, positive seminal vesical invasion" and "positive extraprostatic extension"; (3) treatment notes from 2019 that say Roth has stage 3 cancer; (4) Nelson's prediction that Roth will see progression in five to eight years; and (5) Roth's hearing testimony

that he has stage four cancer. But none of this evidence demonstrates that Roth's cancer progressed after Roth began hormone therapy.

First, Roth says that his treatments after he began hormone therapy show that his cancer was progressive. But the fact that Roth's cancer was being treated does not mean that his cancer progressed. His treatment is evidence that after his hormone intervention, Roth still had cancer; but it is not evidence that his cancer got worse. And Roth does not identify any evidence that his chemotherapy and continued hormone treatments were in response to progression.

Second, Roth points to Nelson's February 2020 treatment note, where Nelson wrote that Roth has "positive lymph node invasion, positive seminal vesical invasion, and positive extra prostatic extension." R. 586.  Although Roth says that he has "little understanding of what this means," Dkt. 25, at 12, he argues that it could mean his cancer was progressive in 2020. But as the ALJ noted, all those features were present in Roth's initial diagnosis in 2017, before Roth's hormone treatments began. R. 21, R. 387. Roth doesn't explain why his 2017 diagnosis shows that his cancer spread after initial hormone intervention.

Third, Roth identifies a May 2019 report that shows Roth has stage three prostate cancer. R. 548. But nothing on that record indicates that his stage three cancer was a new diagnosis. On the previous page of the same record, his stage three cancer is listed under "history of present illness." R. 486. The record does not say that his cancer is progressing.

Fourth, Roth says that Nelson's prediction that Roth will see progression in 5-8 years is evidence that he meets the listing. But as explained above, the fact that Roth will see progression in the future is evidence that Roth's cancer is *not* currently progressive. That Roth

may meet the listing in the future does not mean he meets it now. Any progression isn't expected to come until five to eight years after 2019, beyond the period considered by the ALJ.

Fifth, Roth testified at the hearing that he has stage four cancer. Roth's statement about his stage four cancer was made in passing, in a discussion about his anxiety symptoms. R. 70. But even if Roth meant to assert that his cancer had progressed, his testimony is not supported by the objective medical evidence in the record, where there is no mention of stage four cancer. Roth was represented by counsel, so he's presumed to have made his best case before the ALJ. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). If there were medical records that supported this diagnosis, Roth could have entered them into evidence.

Because Roth's testimony is unsupported by the objective evidence, the ALJ was entitled to discount it. And the ALJ's failure to acknowledge his testimony in the opinion was not error. Although "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position," *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984), the ALJ does not need to provide a written evaluation of every piece of evidence in the record. *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988). The ALJ must only write enough that we can "be assured that the ALJ considered the important evidence," *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). And Roth's uncorroborated lay statement is not substantial enough to require a written assessment.

Roth has not identified any evidence of progression that the ALJ needed to address, but did not. And the ALJ reasonably discounted the important supportive evidence that Roth provided, Dr. Nelson's opinion. The ALJ's treatment of the listing does not warrant remand.

**B. Mental limitations**

Roth contends that the ALJ made two errors in her treatment of Roth's mental limitations. First, he says the ALJ erred when she determined that Roth suffered only mild mental limitations. Second, he says that the ALJ failed to consider his mild mental limitations in his RFC.

The ALJ adequately explained the basis for finding that Roth suffered only mild mental limitations in the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. R. 18–19. The ALJ adopted the opinion of Dr. Frey, a consulting psychologist, who found that Roth had no more than mild limitations in the four broad areas of mental functioning. R. 20. In Frey's consultation, Roth was attentive, pleasant and had a neutral mood. Roth also displayed intact memory, good insight, and excellent abstract thinking ability. And Frey's opinion was consistent with the treatment notes, including a general lack of symptoms and little mention of depression in the record. *Id.*

Roth says that the ALJ improperly discounted Roth's testimony about his symptoms because of his failure to seek treatment. He argues that the ALJ isn't allowed to discount his testimony on that ground unless the ALJ asked Roth to explain the lack of treatment. That's no longer the controlling rule; instead, an ALJ must consider possible reasons for failure to seek treatment. *See Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021).

The court does not see—and the commissioner does not argue—that the ALJ considered other reasons why Roth didn't seek treatment. But this doesn't entitle Roth a remand, for two reasons. First, the ALJ justified her findings on other adequate grounds, including Dr. Frey's report and overall very little mention of depression in the record. R. 20. Second, Roth does not

offer any alternative explanation, such as limited financial resources or lack of insurance, to explain any failure to follow recommended treatment. So even if there was error, it was harmless. *See id*. (finding error harmless where plaintiff did not "identif[y] any reason that she did not seek more treatment.").

Roth also contends that the ALJ erred by not accounting for Roth's mild mental limitations in his RFC. When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment. 20 C.F.R. § 404.1523; *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Nothing in the opinion shows that the ALJ considered whether Roth's mild mental limitations would impact his ability to work. There is no mention of mental limitations in the discussion of Roth's RFC. Even though Roth's mental limitations were mild, the ALJ still should have explained why those mild limitations did not affect his ability to work.

But the error is harmless. The burden is on Roth to identify additional specific restrictions supported by the record that the ALJ should have included but did not. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Roth does not articulate what additional restrictions the ALJ should have assigned or explain why his mild mental limitations would prevent him from doing the unskilled work the ALJ found him capable of performing. Roth contends only that it is "unclear" whether he can work in the occupations the ALJ provided, Dkt. 16, at 43, and that Roth "may be more than mildly affected by a combination of his limitations," Dkt. 25, at 23. And Roth does not explain why he would be unable to perform the jobs cited by the vocational expert. Because Roth did not explain why the combination of his mental and physical limitations would require more significant limitations than what the ALJ assigned, he is not entitled to remand on this basis.

## C. Physical limitations

Roth contends that the ALJ made two errors in her assessment of Roth's physical limitations. First, Roth says that the ALJ did not adequately explain the basis for the physical restrictions in his RFC. Second, Roth argues that his subjective complaints of pain, and his testimony that he occasionally uses a cane, necessitated more significant restrictions

The ALJ should have explained why she chose the specific restrictions she did. The ALJ doesn't explain how she determined that Roth could stand for one hour before needing to sit for ten minutes; nor does she explain how she determined that Roth can lift up to 20 pounds occasionally and up to ten pounds frequently. R. 22. The ALJ doesn't tie those numbers to specific evidence in the record, so the basis for those restrictions is unclear.

Any error in the determination of Roth's physical restrictions is ultimately harmless, because Roth hasn't identified any unaddressed evidence that shows he's entitled to more significant limitations. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (a claimant not entitled to a remand if he does not "identify medical evidence that would justify further restrictions"). The ALJ adequately explained why she did not assign Roth more significant restrictions. She addressed Roth's subjective complaints and explained that they were inconsistent with his normal exam findings and work activities. R.26. The ALJ noted that Roth had normal muscle tone and intact muscle strength on multiple exams, that he was able to lift, carry, handle and finger light objects, and that he had normal range of motion. R. 23. Roth had also worked several hours per week mowing lawns and doing other odd jobs. R.26. And there was no mention of the use of a cane in his medical records. R. 26.

In fact, the ALJ found that Roth was more restricted than several doctors opined. Dr. Beck opined that Roth had no limitations. R. 28, R. 439. And Drs. Korshidi and Fowler opined that Roth could stand for about six hours each day without further limitations. R. 27, R. 94. Roth doesn't point to any medical opinions that call for more restrictive limitations, and the imposition of greater limitations than indicated by medical opinions is not grounds for remand. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

## D. Constitutional claim

Roth argues that 42 U.S.C. § 902(a)(3), which limits the President's authority to remove the commissioner of social security without cause, is unconstitutional. Roth says that the unconstitutional removal provision means that the ALJ did not have the authority to adjudicate his benefits claim and he is entitled to remand for a new, constitutionally adequate proceeding. This court is not persuaded.

The commissioner concedes that the removal provision is unconstitutional under *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021), which held that limitations on the President's ability to remove the single head of an administrative agency violate the separation of powers. Roth contends that because § 902(a)(3) is unconstitutional, the commissioner holds their power on a constitutionally illicit basis and thus the decision of the ALJ is illegitimate.

But in *Collins*, the Supreme Court held that a defective removal provision does not automatically void all agency action. *Id.* at 1788 n.3 ("The unlawfulness of a removal provision does not strip an official of the power to undertake the other responsibilities of his office.") To prevail on his claim, Roth must link the removal provision to his alleged harm; here, the denial of benefits. *Id.* at 1789. The court in *Collins* suggested that harm could be fairly traced to the

removal provision where 1) the commissioner played a role in the agency action and 2) the president would have removed the commissioner to prevent the action but-for the removal provision. *See id*. But Roth hasn't alleged any action by acting Commissioner Kijakazi or former Commissioner Saul related to the denial of benefits; nor has he alleged that either President Biden or Trump would have intervened to stop it. *Cf. id*. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.") Roth alleges that President Biden would have fired Saul immediately had it not been for the removal provision. But Roth hasn't explained how Biden's inability to remove Saul in early 2021 would have any impact on the ALJ's 2020 benefit determination.

Although this claim hasn't yet been presented to the Seventh Circuit, variations on Roth's argument have been advanced in other district courts. In this court's review, none have found that the existence of the removal provision warrants remand of an ALJ's decision denying benefits. *See, e.g.*, *Boger v. Kijakazi*, No. 1:20-CV-00331-KDB, 2021 WL 5023141, at *3 (W.D.N.C. Oct. 28, 2021) (remand not appropriate because there is "no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of [plaintiff's] application for disability benefits."). Because Roth has not alleged any connection between the removal provision and the decision denying him benefits, he is not entitled to remand on this basis.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED and the December 30, 2021, oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered December 22, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge